Larry Albert GREEN, Appellant,

v.

The STATE of Texas, Appellee.

No. 05–88–00553–CR.

Court of Appeals of Texas,
Dallas.

Nov. 22, 1988.

Michael D. Curran, McKinney, for appellant.

Tom O'Connell, Mark J. Rusch, McKinney, for appellee.

Before STEPHENS, STEWART and ROWE, JJ.

ROWE, Justice.

After a jury trial, appellant Larry Albert Green was convicted of forgery by passing. The court fined appellant $1,000.00 and sentenced him to two years' confinement. In four points of error, appellant argues that: (1) the evidence was insufficient because the State failed to prove that appellant knew the writing was forged and that appellant had the intent to defraud or harm another; (2) the evidence was insufficient

because it was legally impossible for appellant to commit the offense using a check which appellant had authority to issue and which was issued to appellant on appellant's partnership account; and (3) the State failed to disprove exculpatory evidence introduced by the State which tended to negate the requisite specific intent.[1]

### Insufficient Evidence to Prove Knowledge and Intent

The record shows that on February 14, 1987, appellant presented a check for $1,000.00 to Debra Davis, a teller at People's National Bank. The check was payable to appellant and had appellant's signature on the back. Davis testified that she knew appellant from his prior visits to the bank and that she recognized appellant's signature on the back of the check. The purported maker of the check was H.K. Green. Appellant negotiated the check, taking $800.00 in cash and depositing the remainder into his savings account.

Appellant's brother, H.K. Green, testified that he did not write the check and had not authorized anyone else to sign his name. He testified that the check was drawn on a partnership account on which both he and appellant had signatory authority. He stated that he had closed the account when he ended the partnership in 1985 and had told appellant that the account was closed. He indicated that appellant had told him that a fire at appellant's residence had destroyed the checks for the account three months after the account was closed. He also testified that appellant had seen his signature on many occasions and that appellant knew he signed his name "Keith Green" and not "H.K. Green."

Richard Dwight Thomas, a cashier at People's National Bank, testified that he telephoned appellant when the check was returned stamped "Account Closed" and "Do Not Redeposit." He stated that he was present when appellant returned to the bank and attempted to make restitution. He testified that to his knowledge the bank never received restitution for the check.

Appellant testified that after a fire destroyed his residence in February of 1985, he turned over the partnership checkbook and other records to his brother. He denied ever telling his brother that the fire had destroyed the checkbook. He admitted that the signature on the back of the check appeared to be his but stated that he did not remember signing the check or passing it to Davis. Appellant attributed his memory loss to severe mental stress, indicating that he voluntarily committed himself to a State mental hospital on March 18, 1987. He testified that a psychiatrist recommended this action because the psychiatrist believed that the stress could cause a complete nervous breakdown.

In his brief, appellant concedes that the State proved he passed a writing to Davis that purported to be the act of H.K. Green who did not authorize the act. [Brief for Appellant at 3]. In his first point of error, appellant argues only that the State failed to prove that he knew the writing was forged and that he had the intent to defraud or harm another. We recognize that the intent to defraud or harm another is a necessary element of the offense of forgery. *Crittenden v. State*, 671 S.W.2d 527, 527 (Tex.Crim.App.1984). We also acknowledge that proof of this element requires a showing that the defendant knew that the instrument he attempted to pass was forged. *Anderson v. State*, 621 S.W.2d 805, 808 (Tex.Crim.App. [Panel Op.] 1981); *Porter v. State*, 711 S.W.2d 698, 699 (Tex.App.—Dallas 1986, no pet.). The State may, however, establish intent to defraud or harm by circumstantial evidence. *Burks v. State*, 693 S.W.2d 932, 936–37 (Tex.Crim.App.1985); *Hill v. State*, 730 S.W.2d 86, 87 (Tex.App.—Dallas 1987, no pet.).

In reviewing appellant's first point of error, our standard of review is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt that appellant knew the

---

1. We have overruled appellant's fourth point of error in an unpublished opinion, *Green v. State*, No. 05–88–00553–CR (Tex.App.—Dallas November 22, 1988).

check was forged and that he had the intent to defraud or harm another. *See Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *McGoldrick v. State,* 682 S.W.2d 573, 577 (Tex.Crim.App.1985); *Hill,* 730 S.W.2d at 87. If there is any evidence establishing this element of forgery beyond a reasonable doubt, we cannot reverse on the ground of insufficient evidence. *See Combs v. State,* 643 S.W.2d 709, 726 (Tex. Crim.App.1982). The trier of fact is the sole judge of the weight and credibility of the evidence and may believe or disbelieve all or any part of any witness' testimony. *Williams v. State,* 692 S.W.2d 671, 676 (Tex.Crim.App.1984); *Johnson v. State,* 571 S.W.2d 170, 173 (Tex.Crim.App.1978).

In determining whether the evidence was sufficient to prove knowledge that a writing was forged and intent to defraud or harm, courts have concluded that the evidence was sufficient where the defendant falsely represented himself to others, *Burks,* 693 S.W.2d at 938; *Guzman v. State,* 739 S.W.2d 381, 383 (Tex.App.—Corpus Christi 1987, pet. ref'd), or where the defendant made false representations as to the maker or origin of the check. *Hill,* 730 S.W.2d at 87. Similarly, where the evidence showed that the defendant had recent, unexplained possession of stolen checks, courts have held that the evidence was sufficient. *Burks,* 693 S.W.2d at 938; *Palmer v. State,* 735 S.W.2d 696, 699 (Tex. App.—Fort Worth 1987, no pet.). On the other hand, courts have determined that the evidence was insufficient where the defendant made no statements suggesting that he knew the check was forged; did not falsely represent himself, the maker, or the origin of the check; did not attempt to flee; and where there was no evidence connecting the defendant with the theft of the checks. *Crittenden,* 671 S.W.2d at 528; *Solis v. State,* 611 S.W.2d 433, 434 (Tex. Crim.App. [Panel Op.] 1981); *Pfleging v. State,* 572 S.W.2d 517, 519–20 (Tex.Crim. App. [Panel Op.] 1978); *Stuebgen v. State,* 547 S.W.2d 29, 32 (Tex.Crim.App.1977).

■ In this case, appellant did not make any false representations regarding himself, the drawer, or the origin of the check. The evidence shows that Davis recognized appellant and had no cause to question him concerning the check. Appellant did not make any statement to Davis suggesting that he was aware that the check was forged, nor did he attempt to avoid apprehension. The absence of such evidence, however, does not necessarily indicate that the State failed to prove the requisite culpable mental state. *See Lossman v. State,* 668 S.W.2d 504, 506 (Tex.App.—Fort Worth 1984, no pet.).

Appellant's brother testified that appellant had possession of the partnership checkbook two years earlier and that appellant told him that a fire had destroyed the checks. Appellant's brother also stated that appellant knew the account was closed and knew he signed his name "Keith" and not "H.K." Appellant's preexisting relationship with his brother, his familiarity with his brother's signature, combined with his knowledge that the account was closed, is evidence from which a rational jury could have concluded that appellant knew his brother's signature was forged and that appellant intended to harm or defraud another. We overrule appellant's first point of error.

### Legal Impossibility

In his second point of error, appellant argues that it was legally impossible for him to commit the offense of forgery under these facts. Appellant points out that the "forged" check was drawn on a partnership account and that he had authority to issue such check. Appellant contends that he could not be guilty of forgery by writing a check to himself on his own account. We note that appellant cites no authority to support this proposition.

■ The thrust of forgery is the intent to defraud or harm. *See Stuebgen,* 547 S.W.2d at 32; *Tatum v. State,* 649 S.W.2d 822, 823 (Tex.App.—San Antonio 1983, no pet.). A person may commit a forgery by signing his own name to a check where he does so in order to create confusion with another depositor. *See Sales v. State,* 628 S.W.2d 796, 799 (Tex.Crim.App. [Panel Op.]

1982). Here, appellant passed a check on a partnership account he knew was closed. Appellant knew that the check purported to be the act of his brother and knew that the signature was not his brother's. We conclude that a person may commit forgery by passing a forged check with the intent to defraud or harm another, even though the check is drawn on an account in which he had an interest, where the person knows that the account has been closed and knows that the drawer's signature is not authentic. We therefore overrule appellant's second point of error.

### Exculpatory Evidence

In his third point of error, appellant complains that the State introduced exculpatory evidence and failed to disprove such evidence beyond a reasonable doubt as required by our state voucher rule. Appellant asserts that two of the State's witnesses, Davis and Thomas, testified that when the bank notified appellant that the check was drawn on a closed account, appellant returned to the bank and attempted to make restitution. Appellant claims that this offer to make restitution is exculpatory because it tends to negate the intent to defraud or harm another. Consequently, appellant argues that the State had a duty to produce other evidence to prove that appellant had the requisite intent.

Where the State introduces into evidence a statement of the defendant which exculpates the defendant, the State must disprove such evidence or the defendant is entitled to an acquittal. *Rogers v. State*, 687 S.W.2d 337, 345 (Tex.Crim.App.1985); *Palafox v. State*, 608 S.W.2d 177, 181 (Tex. Crim.App.1979). This rule applies whether the defendant's statement is written or put into evidence by witnesses who heard it said. *Thompson v. State*, 621 S.W.2d 624, 628 (Tex.Crim.App.1981). To invoke the rule, the defendant's statement must first amount to an admission that the defendant committed the acts which constitute the gravamen of the offense and second amount to an assertion which would tend to clear the defendant from fault or guilt. *Rogers*, 687 S.W.2d at 345; *Palafox*, 608 S.W.2d at 181. Additionally, the rule applies only when the defendant chooses not to testify. *Dunn v. State*, 721 S.W.2d 325, 332 (Tex.Crim.App.1986).

Assuming that the voucher rule remains valid,[2] we fail to see how it can apply in this case. First, appellant elected to testify. Second, the attempt to make restitution does not amount to an admission that appellant committed the acts constituting the offense. Third, when appellant testified, he denied attempting to make restitution. *Cf. Dunn*, 721 S.W.2d at 333 (State disproved exculpatory portions of confession as a matter of law when defendant repudiated confession). Any one of these reasons negates the application of the voucher rule. Accordingly, we overrule appellant's third point of error.

We affirm the judgment of the trial court.

Nov. 22, 1988.

---

**2.** Several courts have noted that the adoption of TEX.R.CRIM.EVID. 607 which became effective September 1, 1986, seems to destroy the underlying rationale for the voucher rule. *Ibanez v. State*, 749 S.W.2d 804, 807 n. 3, 812 (Tex.Crim. App.1986) (Davis, J., dissenting, but noted as correct in this observation by majority opinion); *Gale v. State*, 747 S.W.2d 564, 566 n. 1 (Tex.App. —Fort Worth 1988, no pet.); *Stills v. State*, 728 S.W.2d 422, 425 n. 2 (Tex.App.—Eastland 1987, no pet.). Some of these courts have held that Rule 607 abolishes the voucher rule. *Gale*, 747 S.W.2d at 566; *Stills*, 728 S.W.2d at 428; *Brown v. State*, 725 S.W.2d 801, 808 n. 7 (Tex.App.— Austin 1987, pet. granted). We find it unnecessary, however, to express an opinion on this issue in the present case.